```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| NATIONAL AMUSEMENTS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>BOROUGH OF PALMYRA<br><br>            Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-2469<br>         (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

CONNELL FOLEY, LLP
Kevin J. Coakley
85 Livingston Avenue
Roseland, NJ 07068
     Counsel for Plaintiff

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGIN, PA
Richard L. Goldstein
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
     Counsel for Defendant

**IRENAS**, Senior District Judge:

This action initially arose when Defendant Borough of Palmyra ("Palmyra") issued a resolution closing Plaintiff National Amusement, Inc.'s ("National") flea market to the public due to dangerous subsurface unexploded ordnance. This Court granted summary judgment on all counts in favor of Palmyra. However, National now moves for attorneys' fees pursuant to §

1

1988 for work related to the Consent Order Judge Bumb entered on July 18, 2008. The Consent Order obtained an expedited ordnance removal schedule and permitted National to reopen contingent upon certain precautionary measures.

I.

During, and shortly after World War II, Palmyra owned National's property. *See National Amusements, Inc. v. Borough of Palmyra*, __ F.Supp.2d __, 2012 WL 379909, *1 (D.N.J. 2012). During that time, Palmyra authorized the United States Army to test munitions. *Id.* The former weapons testing impact zone is located where National currently operates the flea market. *Id.*

During the intervening years, no people were reportedly injured, though, required inspections uncovered the possibility of subsurface unexploded munitions. As a result, Environmental Resources Management, Inc. ("ERM") contracted with Munitions Management Group, LLC ("MMG") to investigate possible unexploded munitions and safely dispose of them. *Id.* On March 10, 2008, during the course of the munitions disposal operations, MMG observed a munition flush with the asphalt surface of the parking lot. *Id.* at *2. The presence of a highly explosive munition at, or just below, ground level was particularly concerning because vendors at the flea market used stakes to secure tables and tarps. *Id.* Serious injury or death could result from a stake

being driven into a live munition. *Id.* Furthermore, the risk at any given time was unpredictable because munitions can change their subsurface depth due to frost heaving - a phenomenon in which subsurface ice forms and pushes objects towards the surface. *Id.* MMG informally reported this information to Palmyra on March 10, 2008.

In response to this "imminent threat to public safety," on March 10, 2008, Palmyra drafted a resolution authorizing Police Chief Richard Dreby to request National to voluntarily close their operations or, if National refused, to exercise his emergency powers to restrict the public's access to National's property. *Id.* at *3. When National refused to close voluntarily, Chief Dreby closed National's Property.

On June 6, 2008, National filed a Motion for Preliminary Injunction and Order to Show Cause. (*See* Dkt. Nos. 3-4) In support of the Motion, National relied almost exclusively on the first count of the Complaint entitled "Arbitrary and Capricious Action."[1] (*See* Pl.'s Br., Dkt. No. 4)

Decision on the Motion was unnecessary, however, because on July 30, 2008, Judge Bumb entered a Consent Order whereby National could resume operations by August 13, 2008 provided certain institutional precautions adequately protected the safety

---

[1] National mentions the Due Process Clause in its argument supporting a finding of arbitrary and capricious municipal action, but only in passing. (*See* Br. Prelim. Inj. 16, Dkt. No. 4-7)

3

of flea market customers. (*See* Consent Order ¶ 4, Dkt. No. 17) By way of example, one such institutional precaution was to erect physical barriers to prevent vendors and customers from accessing high risk areas. (*Id.*)

On December 11, 2008, National filed the Amended Complaint, which sought monetary damages for two alleged violations of § 1983 and one action in lieu of prerogative writ under the New Jersey State Constitution.[2] *See National*, 2012 WL 379909, *5. For approximately the next two years, the parties fought principally over interim attorneys' fees related to the entry of the Consent Order. On October 8, 2010, this Court denied the application for interim attorneys' fees without prejudice to its renewal upon the completion of litigation.  (Order, Dkt. No. 107)

On September 30, 2011, Palmyra filed for summary judgment. (*See* Dkt. No. 120) In an Opinion and Order dated February 3, 2012, this Court granted the motion in full. (*See* Dkt. Nos. 126-27) The instant Motion for Attorneys' Fees essentially renews the previous one.

---

[2] National's attempt to recharacterize the action in lieu of prerogative writ as a § 1983 claim at this late stage is unpersuasive. Although the basis for the claim in the Complaint is unclear, National briefed the claim under state law in the motions for preliminary injunction and summary judgment. The Court will not allow National to now assert that the claim was actually a § 1983 claim. *See Singer Management Consultants, Inc. v. Milgram*, 650 F.3d 223, 238-39 (3d Cir. 2011) (quoting *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) ("The basic principle of judicial estoppel ... is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

4

**II.**

"In any action . . . to enforce a provision of section[]. . . . 1983 . . . of [Title 42]. . . the court in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Upon determination that a plaintiff is a prevailing party and is entitled to an award of attorneys' fees, the Court must then decide upon a reasonable award of fees and costs.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This approach is otherwise referred to as the lodestar and "is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia Cnty. Ct. Of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). Once the lodestar is determined, the court may, in its discretion, adjust the lodestar for many reasons, one important reason being the results obtained by the prevailing party. *Hensley*, 461 U.S. at 434; *McKenna v. City of Philadelphia*, 582 F.3d 447, 455-59 (3d Cir. 2009).

The burden is on the fee-applicant to establish a prima facie case. *Hensley*, 461 U.S. at 437. If a prima facie case is established, the opposing party bears the burden of presenting contrary evidence. *See Lanni v. New Jersey*, 259 F.3d 146, 149 (3d

5

Cir. 2001).

Preliminarily, to be entitled to attorneys' fees, Plaintiff must be a prevailing party.[3] Defendant argues that Plaintiff is not a prevailing party because Defendant was granted summary judgment. Defendant further argues that, even if the Consent Order grants Plaintiff prevailing party status, the Consent Order was only based on Plaintiff's state law claim. Because attorneys' fees are only available under § 1988 for claims based on § 1983, Defendant would not be entitled to attorneys' fees.

"In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon Bd. and Care Home, Inc. v. West Virginaia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001). In the Third Circuit, a stipulated settlement confers prevailing party status "where it alters the legal relationship of the parties and is judicially sanctioned.  A stipulated settlement is judicially sanctioned where it: 1) contains mandatory language; 2) is entitled Order; 3) bears the signature of the District Court judge, not the parties' counsel; and 4) provides for judicial enforcement." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006)

---

[3] Defendant's argument that the motion is untimely is without merit. Local Rule 54.2 provides a thirty day window to file a motion for attorneys' fees after the entry of judgment or an order.  This Court's Opinion and Order was filed on February 3, 2012 and the Motion for Attorneys' Fees was filed on March 7, 2012, within the thirty day window.

(internal quotations omitted).

Here, the Consent Order fulfilled the Third Circuit test for a judicially sanctioned stipulated settlement. First, the Consent Order had mandatory language inasmuch as both parties were required to perform tasks by certain dates. Second, the Consent Order was clearly entitled "order." Third, Judge Bumb signed the Consent Order. Fourth, the District Court retained jurisdiction over the case and could have provided judicial enforcement.

Therefore, the mere entry of summary judgment does not preclude Plaintiff from recovering attorneys' fees. The Consent Order provided Plaintiff with some of the injunctive relief sought and was a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989) (internal punctuation omitted).

However, Plaintiff can only recover attorneys' fees as a prevailing party for its § 1983 claims. In other words, if a party succeeds on a state law claim, but loses on § 1983 claims, then Plaintiff may not recover attorneys' fees under § 1988. *See Luria Bros. & Co., Inc. v. Allen*, 672 F.2d 347, 357 (3d Cir. 1982).

Accordingly, the Court must determine the basis for the Consent Order. The preamble states: "This matter, having come

7

before the Court on July 17, 2008 for a hearing on Plaintiff's Motion seeking preliminary injunction, and the parties having been able to resolve their disputes with regard to the pending application . . . ." (Consent Order at 1, Dkt. No. 17) Paragraph 11 reinforces this view: "The resolution of the pending Order to Show Cause through this Consent Order . . ."

The basis for the Consent Order, therefore was the preliminary injunction motion and order to show cause. Plaintiff's moving papers for the application essentially follow the elements required to establish entitlement to a preliminary injunction: (1) likelihood of success on the merits, (2) probability of irreparable injury to the moving party in the absence of relief, (3) the possibility of harm to the non-moving party, and (4) the public interest weighs in favor of granting preliminary relief. *Alessi by Alessi v. Com. of Pa., Dept. of Public Welfare*, 893 F.2d 1444, 1447 (3d Cir. 1990).

With respect to the first element, Plaintiff primarily argued that Plaintiff will succeed on the merits of the claim for an action in lieu of prerogative writ - a claim derived from the New Jersey State Constitution. Although National also devoted a page to the due process claim, the argument was not pursued further.

The next section of the brief argued that National will suffer irreparable injury if the preliminary injunction did not

issue. (Pl.'s Br. 17, Dkt. No. 4-7) Plaintiff argued that "Palmyra's arbitrary and capricious actions have deprived National Amusements of the use of its land . . . ." (*Id.*) The arbitrary and capricious standard is utilized in analyzing an action in lieu of prerogative writ.

It is not clear which claim forms the basis for Plaintiff's discussion of the third element.

In analyzing the fourth element, National wrote "[t]here is never a public interest in having the government take actions that arbitrarily and capriciously destroy the rights of property owners." (*Id.* at 19) National seeks to satisfy the fourth element by applying the standard for an action in lieu of prerogative writ.

After reading National's brief in its entirety, this Court concludes that National sought the preliminary injunction based on the claim for an action in lieu of prerogative writ. Although National devoted one page to the due process clause in arguing that it would likely succeed on the merits, National attempted to satisfy the other elements based only on the claim for an action in lieu of prerogative writ. Therefore, this Court finds that any success that National had by way of the Consent Order was based only on the claim for an action in lieu of prerogative writ. An award of attorneys' fees under § 1988 cannot be premised on National's success on a state law cause of action, however, and

so the instant motion must be denied.

### III.

For the reasons set forth above, the Motion for Attorneys' Fees will be denied.

Dated: 5/9/12                                  /s/ Joseph E. Irenas

**JOSEPH E. IRENAS, S.U.S.D.J.**